UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARY MOLLOY,<br>    *Plaintiff*, | )   3:18-CV-00108 (KAD)<br>)<br>) |
| v. | )<br>) |
| APPLIED RUBBER & PLASTICS, INC.,<br>    *Defendant*. | )<br>)   AUGUST 14, 2020 |

MEMORANDUM OF DECISION
RE: MOTION FOR SUMMARY JUDGMENT

Kari A. Dooley, United States District Judge

This employment discrimination case arises out of the termination of plaintiff Mary Molloy (the "Plaintiff" or "Molloy") from her employment with defendant Applied Rubber & Plastics, Inc. (the "Defendant" or "Applied Rubber"). Pending before the Court is Applied Rubber's motion for summary judgment as to all counts in the Amended Complaint. (ECF No. 45.) For the reasons set forth in this decision, the motion for summary judgment is GRANTED.

**Background**

    **Facts[1]**

Applied Rubber manufactures rubber and plastic products and components and supplies them to distributors and manufacturers worldwide. (Def.'s SMF at ¶ 1.) Applied Rubber is owned

---

[1] The relevant facts are taken from the Defendant's Local Rule 56(a)(1) Statement ("Def.'s SMF") and attached exhibits; (ECF No. 45-2); and the Plaintiff's Local Rule 56(a)(2) Statement and attached exhibits ("Plf.'s SMF"); (ECF No. 50-2). All of the facts set forth herein are undisputed unless otherwise indicated.

    The Court observes that the Plaintiff repeatedly qualified her admissions and repeatedly failed to cite to evidence in the records in support of her qualified admissions and denials. Rule 56(a)2 of the District of Connecticut Local Rule of Civil Procedure ("Local Rules") requires that the party opposing a motion for summary judgment respond to facts in the moving party's Local Rule 56(a)1 Statement by "admitting or denying the fact and/or objecting to the fact as permitted by Federal Rule of Civil Procedure 56(c)." Local Rule 56(c) provides that "each denial in an opponent's Local Rule 56(a)2 Statement, must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial, or (2) other evidence that would be admissible at trial."

    The Plaintiff's failure to comply with Local Rule 56(c) "frustrate[s] [Local] Rule 56(a)'s purpose of clarifying whether a genuine dispute of material facts exists." *Zamichiei v. CSAA Fire & Cas. Ins. Co.*, No. 16-cv-00739 (VAB),

by Brendan Farrell ("Farrell") and has twenty employees. (*Id.* at ¶¶ 1–2.) Kelly Cardona ("Cardona"), who is female, has been an employee of Applied Rubber since 2002 and the general manager since 2004. (*Id.* at ¶ 3.) As the general manager, Cardona oversees the operations of the entire company, including accounts payable, accounts receivable, production, shipping, quality, and human resources. (*Id.*)

Applied Rubber employs two administrative assistants. In 2014, Farrell and Cardona interviewed Molloy, a female, to be a temporary administrative assistant. (*Id.* at ¶¶ 4–5.) Farrell deferred to Cardona when deciding whether to hire Molloy. (*Id.* at ¶ 7.) Cardona decided to hire Molloy, who began work in September of 2014. (*Id.* at ¶¶ 5–6.) In or about November of 2014, Molloy became a full-time employee, continuing her work as an administrative assistant. (*Id.* at ¶ 8.) Molloy understood that she was an at-will employee who could be terminated for any lawful reason. (*Id.* at ¶ 52.) Molloy's work hours were from 8:00 a.m. to 5:00 p.m. with one hour for lunch. (*Id.* at ¶ 12.) Molloy reported to Cardona both when she was a temporary employee and when she was a full-time employee. (*Id.* at ¶ 13.) As an administrative assistant, Molloy had several duties, including managing accounts payable. (*Id.* at ¶¶ 14–15.) In either December of 2014 or January of 2015, however, the accounts payable function was removed from Molloy's duties. (*Id.* at ¶ 15.) The parties dispute whether this function was removed because of

---

2018 WL 950116, at *1 n.1 (D. Conn. Feb. 20, 2018) (quoting *Liston-Smith v. CSAA Fire & Cas. Ins. Co.*, 287 F. Supp. 3d 153, 157, n.2 (D. Conn. 2017)). The Court therefore deems admitted all qualified admissions and denials that do not comply with Local Rule 56 for purposes of resolving this motion. *See* D. Conn. L. Civ. R. 56(a)(3) ("Failure to provide specific citations to evidence in the record as required by this Local Rule may result in the Court deeming admitted certain facts that are supported by the evidence in accordance with Local Rule 56(a)1. . . .").

performance issues or because the other administrative assistant needed more work. (*Compare* Def.'s SMF at ¶ 16 *with* Plf.'s Response to Def.'s SMF at ¶ 5.)

At the time Molloy was made a full-time employee, Applied Rubber's other administrative assistant was Theresa Palega ("Palega"), a female. (Def.'s SMF at ¶ 17.) On August 13, 2015, Palega resigned. (*Id.* at ¶ 18.) That same day, Cardona saw Molloy updating her resume and applying for jobs on the internet during a period when she was supposed to be working.[2] (*Id.* at ¶ 23.) Cardona told Molloy that she could not update her resume and apply for jobs because she needed her help with work. (*Id.*)

Cardona subsequently interviewed Crystal Foti-Vono ("Foti-Vono") and Tisha Callahan ("Callahan"), both females, to replace Palega. (*Id.* at ¶¶ 19, 37.) Cardona selected Callahan, who began work on August 24, 2015. (*Id.* at ¶ 19.) After Callahan was hired, Molloy told Cardona that she wanted to be paid more, claiming that Callahan was being paid more than her. (*Id.* at ¶ 21.) The parties dispute the tone and tenor of Molloy's request. The parties also dispute whether Molloy began exhibiting a generally poor attitude at work after Callahan's hiring.[3]

Applied Rubber maintains, and Molloy disputes, that on August 31, 2015 Farrell and Cardona decided to terminate Molloy's employment for several reasons, including her poor work performance, her poor attitude at work, and the fact that Molloy had worked on her resume and applied for jobs on the internet while at work.[4] (*Id.* at ¶¶ 32–33.) Farrell decided to communicate

---

[2] Company records show that Molloy accessed career and job websites using her computer at work on August 13, 2015 between 2:54 p.m. and 3:45 p.m. (*Id.* at ¶ 26.) They also show that Molloy took her lunch break that day between 12:01 p.m. and 12:55 p.m. (*Id.*) It is unclear on what date Cardona observed Molloy updating her resume. Construing the evidence in a light most favorable to Molloy, the Court infers that it was on August 13, 2015 and not a separate day.

[3] Molloy denies this allegation as it appears in the Defendant's Rule 56(a)(1) statement, but she does not cite to any evidence in support of the denial. She merely points out that Molloy's personnel record contained no documentation of discipline.

[4] Applied Rubber also asserts that it terminated Molloy because of her inappropriate behavior when seeking a raise and an incident in which Molloy slapped a male co-worker on the buttocks twice. Because there is a genuine dispute concerning these incidents, the Court does not consider them further.

the decision to Molloy at the end of the week, on September 4, 2015. (*Id.* at ¶ 34.) On September 2, 2015, Cardona reached out to Foti-Vono via Facebook Messenger and asked whether she had found another job. (*Id.* at ¶ 37; Ex. B to Cardona Aff., ECF No. 45-2 at 118; Ex. A to Foti-Vono Aff., ECF No. 45-2 at 123.) Foti-Vono responded that she was still looking. (Ex. B to Cardona Aff.; Ex. A to Foti-Vono Aff.) On September 3, 2015, Cardona told Foti-Vono that another administrative assistant position was opening up and that she would like to offer it to her. (Ex. B to Cardona Aff.; Ex. A to Foti-Vono Aff.; Def.'s SMF at ¶ 38.) Foti-Vono accepted the position that same day.[5] (Ex. B to Cardona Aff.; Ex. A to Foti-Vono Aff.; Def.'s SMF at ¶ 39.)

On September 4, 2015, Molloy left work early and, thus, no termination decision was communicated to her. (*Id.* at ¶ 35.) The office was closed on September 7, 2015 in observance of Labor Day, and Molloy did not return to work until September 8, 2015. (*Id.* at ¶ 42–43.) Molloy left work in the morning, however, after fainting. (*Id.* at ¶¶ 43–44.) As a result, no termination decision was communicated to her. (*Id.* at ¶ 45.) On September 9, 2015, Cardona reached out to Molloy, via text message, concerning how she was feeling, and Molloy reported that she was not feeling well and had a doctor's appointment the following morning. (Plf.'s Ex. 7 at 2, ECF No. 50-10.) Cardona asked whether Molloy would be out of the office as a result, and Molly responded that she "suppose[d] so" and asked whether Cardona needed a note from her doctor. (*Id.* at 2–3.) Cardona stated that she did not but indicated that she might bring in a temporary assistant. (*Id.* at 3.) The following day, September 10, 2015, Cardona again reached out to Molloy about how she was doing. (*Id.*) Molloy reported that she was still at the doctor's office. (*Id.*) She further stated that she had a cardiologist appointment on September 25, 2015 and that her doctors wanted her to remain home until she was cleared by the cardiologist for work. (*Id.*) In response, Cardona asked

---

[5] It is undisputed that Foti-Vono began working as an administrative assistant at Applied Rubber on September 21, 2015. (Def.'s SMF at ¶ 40.)

4

Molloy to give her and Farrell a call. (*Id.* at 6.) During that call, Cardona informed Malloy that her employment was being terminated because of, *inter alia*, performance issues and the time she spent at work revising her resume and applying for jobs online. (Def.'s SMF at ¶¶ 55–56.) Cardona did not tell Molloy that she was being terminated because she thought that Molloy had heart disease or because of her upcoming appointment with a cardiologist. (*Id.* at ¶¶ 57–58.)

Molloy disputes when the decision to terminate her was made and when the search for her replacement began. Molloy maintains that the decision to terminate her employment was made on September 8, 2015, after she fainted at work, and that the search for her replacement did not begin until after that date. (Plf.'s Response to Def.'s SMF at ¶ 32.) Molloy further contends that her employment was terminated because she was perceived as having heart disease and because she was female. Molloy does not dispute the substance of her conversation with Cardona and Farrell on August 10, 2015, as outlined above.

**Procedural History**

On January 18, 2018, Molloy initiated this employment discrimination action. The operative complaint is the Amended Complaint filed on March 8, 2018. (ECF No. 12.) The Amended Complaint asserts four causes of action: (1) perceived disability discrimination in violation of the Americans with Disabilities Act Amendments of 2008, 42 U.S.C. § 12101, *et seq.* ("ADA"); (2) perceived disability discrimination in violation of the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-60a, *et seq.* ("CFEPA"); (3) gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"); and (4) gender discrimination in violation of the CFEPA.

**Standard of Review**

The standard under which the Court reviews motions for summary judgment is well-established. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," while a dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Significantly, the inquiry being conducted by the court when reviewing of a motion for summary judgment focuses on "whether there is the need for a trial — whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id*. at 250. As a result, the moving party satisfies his burden under Rule 56 "by showing . . . that there is an absence of evidence to support the nonmoving party's case" at trial. *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (internal quotation marks omitted). Once the movant meets his burden, the nonmoving party "must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)). "[T]he party opposing summary judgment may not merely rest on the allegations or denials of his pleading" to establish the existence of a disputed fact. *Wright*, 554 F.3d at 266; *accord Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990). "[M]ere speculation or conjecture as to the true nature of the facts" will not suffice. *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citations omitted; internal quotation marks omitted). Nor will wholly implausible claims or bald assertions that are unsupported by evidence. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991); *Argus*

*Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 45 (2d Cir. 1986).  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).

In determining whether there exists a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian,* 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft,* 336 F.3d 128, 137 (2d Cir. 2003)).  "In deciding a motion for summary judgment, the district court's function is not to weigh the evidence or resolve issues of fact; it is confined to deciding whether a rational juror could find in favor of the non-moving party." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 254 (2d Cir. 2002).

**Discussion**

Applied Rubber contends that it is entitled to judgment as a matter of law on Molloy's claims under the ADA, the CFEPA, and Title VII.  Claims under each of these remedial statues are analyzed using the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009) (ADA); *Feliciano v. Autozone. Inc.*, 316 Conn. 65, 73 (2015) (CFEPA); *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 108 (2d Cir. 2019) (Title VII).

"Under this framework, a plaintiff must first establish a *prima facie* case of discrimination." *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010).  To establish a prima facie case of discrimination, "a plaintiff must show that (1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to the inference of discrimination." *Id.*

at 491–92. "The burden of proof that must be met to permit an employment-discrimination plaintiff to survive a summary judgment motion at the prima facie stage is *de minimis*." *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994) (alteration omitted; citation omitted; internal quotation marks omitted).

"Once the plaintiff has presented a prima facie case of discrimination, the defendant has the burden of producing, through the introduction of admissible evidence, reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action. After the defendant has articulated such nondiscriminatory reasons, the plaintiff has an opportunity to show that the reason was merely a pretext for discrimination. Pretext may be demonstrated either by the presentation of additional evidence showing that the employer's proffered explanation is unworthy of credence or by reliance on the evidence comprising the prima facie case, without more." *Id.* at 38 (citations omitted; emphasis omitted; internal quotation marks omitted).

### Disability Discrimination Claims

Applied Rubber contends that Molloy cannot establish a prima facie case or pretext because the undisputed facts establish that the decision to terminate her employment was made several days before she fainted and was based on performance issues, not a perceived disability. Molloy responds that there is a genuine dispute as to whether Applied Rubber decided to terminate her on August 31, 2015 or September 8, 2015, the day she fainted at work. She further contends that she can establish that her termination was pretextual based on the lack of any documentation in her personnel file that she was performing poorly.

The Court agrees with Applied Rubber that Molloy cannot make out a prima facie case of disability discrimination. In the first instance, the Court finds that there is not a genuine dispute

as to the date the decision was made to terminate Molloy's employment. Cardona and Farrell, the two individuals who made that decision, asserted in both their deposition testimony and their sworn affidavits that they decided to terminate Molloy on August 31, 2015. Further, Applied Rubber has submitted authenticated copies of the communications between Cardona and Foti-Vono on September 2, 2015 and September 3, 2015, which confirm that Cardona offered Foti-Vono the soon-to-be-open administrative assistant position on September 3, 2015.

In support of her contention that the decision to terminate her was made on September 8, 2015, Molloy cites Applied Rubber's response to her complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO"). In that response, Farrell stated that Cardona told him that Molloy should be terminated on September 8, 2015 and that he directed Cardona to look for a replacement **that same day**. Although Farrell's response to the CHRO complaint was made under oath, it is manifest from the record, as cited, that he was mistaken. Cardona could not possibly have offered a position to Foti-Vono five days before she was even told to look for Molloy's replacement. In addition, ten days after Applied Rubber submitted its response to Molloy's CHRO complaint, Cardona submitted a letter to the CHRO correcting the record and clarifying that she advised Farrell that Malloy needed be terminated on August 31, 2015. Finally, Farrell submitted a supplemental affidavit acknowledging his mistake in the CHRO answer and explaining that he knows that August 31, 2015 is the correct date because he remembers that he spoke with Cardona the day after he returned from a week-long vacation on August 30, 2015 and because Cardona would not have contacted Foti-Vono to offer her a job before they decided to terminate Molloy. Farrell's supplemental affidavit is consistent with his and Cardona's earlier affidavits and testimony that they decided to terminate Molloy's employment after Farrell returned from a vacation.

Accordingly, because Molloy's purported heart trouble did not manifest itself until she fainted on September 8, 2015, the decision to terminate her employment on August 31, 2015 cannot have been based on a perceived disability and summary judgment is therefore appropriate on this basis as to Count One and Count Two.

Nonetheless, even if the Court were to find a genuine issue of material fact as to the date on which the decision was made to terminate Molloy's employment, Molloy still cannot make out a prima facie case for disability discrimination. Molloy has not identified any direct evidence that supports her claim that Applied Rubber terminated her because they perceived her as having heart disease. By way of circumstantial evidence, Molloy cites to her claims that (1) the decision was made to terminate her on the same day as her fainting spell, (2) Cardona was aware that she had high blood pressure prior to that event, and (3) she was replaced by an employee that was not perceived as disabled. This evidence is far too tenuous to give rise to a reasonable inference that Farrell or Cardona perceived Molloy as having heart disease, let alone that she was terminated because of that perception. Indeed, Molloy concedes that she did not tell Cardona she was seeing cardiologist until September 10, 2015, two days after the date on which she claims the decision to terminate her had been made. Finally, it is undisputed that another Applied Rubber employee, Ken Moors, suffered a heart attack in August of 2015, shortly before Molloy was terminated. Moors was absent for a total of fourteen weeks due to two separate heart-related surgeries, but he was not terminated and returned to work after both absences. This further undermines the inference that Applied Rubber held animus toward Molloy or terminated her because of perceived heart disease. As does Molloy's testimony that Applied Rubber was "famous for supplying their employees with [short-term disability insurance]." (Molloy Dep. at 99, ECF No. 50-4 at 22.)

Although the burden for establishing a prima facie case is minimal, "a plaintiff has to offer more than mere conjecture and speculation as to the discriminatory animus taken in relation to the adverse action." *Cope v. Wal-Mart Stores E., LP*, No. 15-cv-01523 (CSH), 2017 WL 2802722, at *13 (D. Conn. June 28, 2017); *see also Norton v. Sam's Club*, 145 F.3d 114, 119 (2d Cir. 1998) ("a jury cannot infer discrimination from thin air"). Here, a jury would have to resort to conjecture and speculation in order to conclude that a perception that Molloy had heart disease played a role in her termination. Summary judgment may be granted on this basis as well as to Count One and Count Two.

**Gender Discrimination Claims**

Applied Rubber next seeks summary judgment on Molloy's claims that it discriminated against her on the basis of her gender. Molloy cites to no direct evidence of gender discrimination. In support of her prima facie case, Molloy claims that she was treated differently than two similarly situated male employees. Applied Rubber disputes that these employees were similarly situated, and it further highlights that Cardona and Foti-Vono are both female, which undermines the argument that Applied Rubber discriminated against Molloy based on her female gender.

The following additional facts are necessary to resolve these claims. Since 2004, Al Dean, a male, has worked at Applied Rubber as a shipper and receiver, loading boxes, placing them on the dock for shipment, and taking in incoming products. (Def.'s SMF at ¶ 64.) During the course of his employment, Dean was given a written warning on one occasion for not following inspection protocols. (*Id.*) Ken Moors, a male, is the production manager at Applied Rubber and has been an employee since 1994. (*Id.* at ¶ 66.) As previously discussed, in August of 2015, he suffered a heart attack. (*Id.*) Moors was absent on two occasions for a total of fourteen weeks due to two separate heart-related surgeries. (*Id.* at ¶ 69.) Moors was not terminated as a result of his heart

11

condition but instead returned to work after both absences. (*Id.*) Finally, a female machine operator, who was employed at Applied Rubber from 1990 until her retirement in 2015, took a leave of absence in 2013 for a medical condition and returned to work after her leave. (*Id.* at ¶ 71.)

"A showing of disparate treatment—that is, a showing that an employer treated plaintiff less favorably than a similarly situated employee outside his protected group—is a recognized method of raising an inference of discrimination for the purposes of making out a prima facie case. An employee is similarly situated to co-employees if they were (1) subject to the same performance evaluation and discipline standards and (2) engaged in comparable conduct. The standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, rather than a showing that both cases are identical. In other words, the comparator must be similarly situated to the plaintiff in all material respects." *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 493–94 (2d Cir. 2010) (alteration omitted; citations omitted; internal quotation marks omitted).

The Court cannot conclude that Molloy was similarly situated to either Dean or Moors. Neither is an administrative assistant and there is no evidence that they engaged in comparable conduct to Molloy. Neither was disciplined for updating their resume or applying for new jobs when they were supposed to be working.[6] Dean did receive a written warning on one occasion due to his failure to follow inspection protocols. The parties have not presented any evidence concerning the nature of this violation, and, therefore, the Court cannot discern how Dean's receipt

---

[6] Molloy contests whether she was fired for searching for other employment during work hours. "In the context of employee discipline, however, the plaintiff and the similarly situated employee must have 'engaged in comparable conduct,' that is, conduct of 'comparable seriousness.'" *Raspardo v. Carlone*, 770 F.3d 97, 126 (2d Cir. 2014) (citation omitted). As a result, this conduct is relevant for purposes of determining whether any similarly situated male employees were treated more favorably than Molloy.

of a written warning on this occasion reveals that Dean was treated more favorably than Molloy. Molloy suggests that she should have received a written warning before she was terminated, but, as Molloy acknowledges, Applied Rubber did not have any formal disciplinary policies or procedures at the time she was terminated. As a result, there is nothing inherently suspect in the fact that Molloy did not receive a written warning, particularly when it is undisputed that Molloy did receive a verbal reprimand for updating her resume and applying for new jobs during a period when she was supposed to be working.

With respect to Moors, there is no evidence that Moors has ever had any performance issues or ever been disciplined at work. Moors is identified as a comparator insofar as he, like Molloy (at least by perception), had a heart condition. Molloy emphasizes that Moors was not subject to any adverse employment action as a result of his heart condition, which Molloy asserts gives rise to the inference of gender discrimination against her. As previously discussed, however, there is no evidence from which a jury could reasonably conclude that Applied Rubber was aware of or even believed that Molloy suffered from heart disease or had a heart condition at the time that the decision to terminate her was made (whether it was on August 31, 2015 or September 8, 2015).

Molloy might believe, and a jury might agree, that it was unfair that she was terminated without receiving more warnings or being given an opportunity to improve. But neither Title VII nor the CFEPA "make employers liable for doing stupid or even wicked things; it makes them liable for *discriminating,* for firing people on account of their [gender]." *Norton*, 145 F.3d at 120. There is simply no evidence that Applied Rubber terminated Molloy because she was female. Quite to the contrary, the undisputed facts in this case demonstrate that Applied Rubber did not harbor discriminatory animus toward its female employees generally or Molloy in particular.

Cardona, who is female, has been the general manager of Applied Rubber since 2004. All of the administrative assistants during the period in question, including Molloy's replacement, are female. *Nieves v. Avalonbay Communities, Inc.*, No. 06-cv-00198 (DJS), 2007 WL 2422281, at *11 (D. Conn. Aug. 23, 2007) ("[a] replacement within the same protected class cuts strongly against any inference of discrimination"); *see also Boczar v. Anthem Cos., Inc.*, No. 15-cv-00830 (VLB), 2016 WL 7364801, at *6 (D. Conn. Dec. 19, 2016) (same; collecting cases). Applied Rubber further employed a female machine operator for twenty five years, and it did not take any adverse action against her when she took a leave of absence for medical reasons.

It also cannot be overlooked that Cardona made the decision both to hire and to terminate Molloy. "An inference against . . . discrimination can be drawn 'where the person who participated in the allegedly adverse decision is also a member of the same protected class.'" *Gorham v. Town of Trumbull Bd. of Educ.*, 7 F. Supp. 3d 218, 236 (D. Conn. 2014) (quoting *Drummond v. IPC Intern., Inc.*, 400 F. Supp. 2d 521, 532 (E.D.N.Y.2005)). Similarly, "when the person who made the decision to fire was the same person who made the decision to hire, especially when the firing occurred only a short time after the hiring, it is difficult to impute [to the decisionmaker] an invidious firing motivation that would be inconsistent with [the] decision to hire." *Jetter v. Knothe Corp.*, 324 F.3d 73, 76 (2d Cir. 2003). Here, Cardona participated in the decision both to hire and to terminate Malloy, and the decision to terminate Molloy was made less than a year after she was hired as a temporary employee and ten months after she was hired as a full-time employee. Accordingly, the same-actor inference further undermines any claim that Cardona discriminated against Molloy because of her gender.

On this record, no reasonable jury could conclude that Molloy was terminated as a result of gender discrimination. Applied Rubber is entitled to summary judgment as to Count Three and Count Four.

**Conclusion**

For the reasons set forth in this decision, Applied Rubber's motion for summary judgment [ECF No. 45] is GRANTED. The Clerk of Court is directed to enter judgment in favor of Applied Rubber and close this matter.

**SO ORDERED** at Bridgeport, Connecticut, this 14th day of August 2020.

                                                     */s/ Kari A. Dooley*
                                                  KARI A. DOOLEY
                                                  UNITED STATES DISTRICT JUDGE